IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DAPHNE D. SUDDRETH,

        Plaintiff,

v.                              CIVIL ACTION NO. 5:11-cv-00389

MAURICES INCORPORATED,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant's Motion to Dismiss (Document 5). For the reasons set forth below, the Court grants the motion.

*I.*

Viewing the allegations in Plaintiff's Complaint as true, this action arises as a result of the termination of Plaintiff's employment. Plaintiff, Daphne D. Suddreth, was employed as a store manger for Maurices, Inc., from July 9, 2008, to May 12, 2010. (Defendant's Notice of Removal, Ex. A., Complaint (Document 1-1), ¶ 3.) In April 2010, Plaintiff began reporting to a new district manager. (*Id*. ¶ 4.) Thereafter, she began to "experienc[e] difficulties" with the new manager including, "harassment, derogatory comments and false allegations of misconduct." (*Id*. ¶ 5.) On May 2, 2010, Plaintiff contacted Defendant's Human Resource Department, "as is required" by Defendant's Associate Handbook, to address the issues with her district manager. (*Id*. ¶ 6.) However, her complaint went unanswered. (*Id*. ¶ 7.) Defendant terminated Plaintiff "for alleged misconduct" on May 12, 2010. (*Id*. ¶ 8.) Plaintiff asserts that Defendant terminated her

employment "for a vindictive purpose and in retaliation for her report(s) to the Human Resources Department." (*Id.* ¶ 9.)

On April 26, 2011, Plaintiff filed the instant civil action against Defendant in the Circuit Court of Raleigh County, West Virginia, asserting three counts: wrongful termination, infliction of emotional distress,[1] and breach of contract. Plaintiff also alleged a separate cause of action for punitive damages. In sum, Plaintiff seeks compensatory and punitive damages, pre-judgment and post-judgment interest on all damages, and reasonable costs, expenses and attorney's fees. On June 1, 2011, Defendant removed this matter by invoking this Court's diversity jurisdiction. Thereafter, on June 8, 2011, Defendant filed the instant motion to dismiss and accompanying memorandum (Document 6). On August 15, 2011, Plaintiff opposed the motion (Document 9.)[2] Defendant did not file a reply. The matter is ripe for this Court's consideration.

*II*.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2)

---

[1] Plaintiff did not specifically indicate whether she is asserting a claim for negligent infliction of emotional distress or intentional infliction of emotional distress. However, her response to Defendant's motion to dismiss reveals that she is asserting a claim of the latter. (*See* Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Resp.") (Document 9) at 4-5.)

[2] Defendant did not contest or challenge Plaintiff's late submission.

requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This pleading standard requires that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal*, the Untied States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id*. The plausibility standard "asks for more than a sheer possibility that a [party] has acted unlawfully." *Id*. Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557). Such "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]"– "that the pleader is entitled to relief." *Id*. (quoting Fed.R.Civ.P. 8(a)(2)).

*III.*

Defendant challenges the sufficiency of Plaintiff's Complaint by asserting that Plaintiff failed to allege: (1) any facts to overcome the presumption of her at-will employment with Defendant; (2) any atrocious, outrageous, extreme or intolerable conduct by Defendant to assert a claim for infliction of emotional distress, and (3) any provisions of the Defendant's Associate Handbook which reflect a "very definite" promise to create a contract of employment. Further, Defendant argues that Plaintiff's cause of action for punitive damages must be dismissed because West Virginia does not recognize an independent cause of action for punitive damages. The Court will consider Defendant's challenge of each claim below.

*A. Wrongful Termination*

The first cause of action alleged by Plaintiff is that of wrongful termination. In her Complaint, Plaintiff alleges that she:

> was discharged from her employment with Defendant without any cause or justification whatsoever and in direct violation of company policy. As a result of the actions of the Defendant, Plaintiff has suffered various damages, including lost wages associated with her former employment.

(Compl. ¶11.)

In West Virginia, "employees and employers alike are generally governed by the at will employment doctrine." *Feliciano v. 7–Eleven, Inc.*, 559 S.E.2d 713, 717 (W.Va. 2001); *see also Eaton v. City of Parkersburg*, 482 S.E.2d 232, 236 (W.Va.1996) ("In the absence of other evidence, West Virginia law presumes that employment is at will."). "[A]n at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause." *Feliciano*, 559 S.E.2d at 718 (internal citation omitted). However, the Supreme Court of Appeals

of West Virginia has cautioned that this rule is not absolute. Instead, this rule governing the at will doctrine "must be tempered by the . . . principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 275 (W.Va.1978).[3] Therefore, in West Virginia "a cause of action for wrongful discharge exists when an aggrieved employee can demonstrate that his/her employer acted contrary to substantial public policy in effectuating the termination." *Feliciano*, 559 S.E.2d at 718. The Supreme Court of Appeals of West Virginia has provided that in order to obtain relief under a claim for wrongful discharge in contravention of substantial public policy, the plaintiff must show:

> (1) [Whether a] clear public policy existed and was manifested in a state or federal constitution, statute, administrative regulation, or in the common law (the *clarity* element); (2) [Whether] dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element); (3) [Whether t]he plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and (4) [Whether t]he employer lacked an overriding business justification for the dismissal (the *overriding justification* element).

*Swears v. R.M. Roach & Sons, Inc.*, 696 S.E.2d 1, 6 (W. Va. 2010) (citing *Feliciano*, 559 S.E.2d at 723) (internal citations omitted).

Defendant argues that Plaintiff fails to allege conduct which contravenes a substantial public policy and that the allegation that she was terminated in violation of company policy is insufficient to support a wrongful discharge claim. (Brief in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") (Document 6) at 3-5.) This Court concurs. A review of Plaintiff's Complaint reveals that

---

[3] This tort cause of action set forth in *Harless* has commonly been referred to as an action for "retaliatory" or "wrongful" discharge. *Slack v. Kanawha County Hous. & Re-Dev. Auth.*, 423 S.E.2d 547, 555 n.8 (W. Va. 1992).

she has not asserted any factual allegations that establish whether a clear and substantial public policy exists, whether her dismissal would jeopardize such a policy, or whether her employer's motivation in her dismissal is related to a public policy. Instead, Plaintiff asserts that she was fired without cause in violation of *company* policy. The focal point of this cause of action is not the internal workings or policies of an employer (*see Harshbarger v. CSX Transp., Inc.*, 478 F.Supp. 2d 890, 895 (S. D. W. Va. 2006) (Chambers, J.), but rather whether a public policy exists as "established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Birthisel v. Tri-Cities Health Servs. Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992).[4] Plaintiff has alleged that she experienced harassment during the time in which she worked under the new district manager and that she "contacted Maurice's Human Resource Department to address the issues[.]" (Compl.¶ 5-6.). Plaintiff does not assert the nature of the harassment or the derogatory comments that were directed towards her or whether a pre-existing public policy precludes such conduct to support her claim. For instance, she has not asserted any harassment violative of the West Virginia Human Rights Act.[5] Even if she had included an allegation pursuant to this Act, on these facts, her claim would still be fatally flawed. The West Virginia Supreme Court

---

[4] "[A] determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111, 114 (W.Va.1984); *Feliciano*, 559 S.E.2d at 717.

[5] The West Virginia Human Rights Act declares that:
> It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. Equal opportunity in the areas of employment . . . is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. . . . The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va. Code, § 5-11-2

of Appeals has rejected the view that all forms of harassment of an individual by his or her employer are violative of human and civil rights as contemplated by the West Virginia Human Rights Act. *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 433 (W. Va. 1998) (court held that "no general public policy against harassment in the workplace is created by the West Virginia Human Rights Act for purposes of West Virginia wrongful discharge law.") For these reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Therefore, Defendant's motion to dismiss Plaintiff's wrongful discharge claim should be granted.

### *B. Infliction of Emotional Distress*

Next, Plaintiff alleges a claim for "infliction of emotional distress." (Compl. ¶¶ 13-15.)[6] In West Virginia the tort of intentional infliction of emotional distress or the tort of outrage was first defined in *Harless v. First Nat'l Bank in Fairmont*. In that case, the West Virginia Supreme Court of Appeals stated that "one who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Harless*, 289 S.E.2d at703 (quoting the Restatement of Torts (Second), § 46 (1965)). To prevail on this claim, a plaintiff is required to prove that: (1) the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was ceratin or substantially certain emotional distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress and (4)

---

[6] *See supra* n.1.

the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Travis*, 504 S.E.2d at 425.

Defendant moves for dismissal of this claim by contending that in asserting a claim for intentional infliction of emotional distress in the employment circumstance, the termination "itself *cannot* be the basis for the claim[,]" but that "a plaintiff must establish that the employer's conduct in performing an investigation and/or effectuating the termination is the cause of her alleged emotional distress." (Def.'s Mem. at 6.) Defendant's argument is derived from the holding in *Dzinglski v. Weirton Steel Corp.* In *Dzinglski*, a management employee alleged, among other things, that he had been wrongfully discharged and that he suffered intentional infliction of emotional distress, following his termination amid allegations that he received kickbacks. The employee was suspended with pay while the employer investigated the allegations. Although, all of the allegations were never fully substantiated and no evidence of criminal wrongdoing existed, the employee was discharged. At trial, the court denied the employer's motion for directed verdict on the intentional infliction of emotional distress claim. On appeal, the jury verdict in favor of the employee was reversed. In reversing the verdict, the Supreme Court of Appeals of West Virginia sought to "delineate more precisely the conduct that is relevant in a wrongful discharge action . . . and the conduct that underlies the tort of outrage." *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 225 (W. Va. 1994), *modified on other grounds as stated in Tudor v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 554 (W. Va. 1997). The court concluded that in analyzing a tort of intentional infliction of emotional distress or tort of outrage in the employment context:

> [t]he prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any

8

> improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

(*Dzinglski*, 445 S.E.2d at 225; *Roth v. DefeliceCare, Inc.*, 700 S.E.2d 183, 194 (W. Va. 2010). The court ultimately determined that the employer's investigation of the alleged improprieties and the manner in which he was discharged did not rise to the level of conduct necessary to satisfy the tort of outrage.

Here, Plaintiff alleges that the "acts of the Defendant" resulted in her suffering "severe emotional distress, annoyance, anxiety and depression, which damaged [her] ability to gain meaningful and fulfilling employment, and . . . affected [her] personal relationships greatly." (Compl. ¶ 14.) Plaintiff does not specifically allege the "acts of the Defendant" supporting her claim. However, a fair reading of the complaint suggests that she is referring to the district manager's "harassment, derogatory comments, false allegations of misconduct, the Human Resource Department's failure to answer her complaint and her termination which was "orchestrated by the district manager for a vindictive purpose and in retaliation for her report(s) to the Human Resources Department." (Compl. ¶¶ 5, 7 and 9.) Contrary to Defendant's assertion otherwise, Plaintiff is attempting to assert a claim based on the manner by which Defendant effected her termination, (*i.e.*, an orchestrated dismissal done in retaliation for complaining about a district manager to the human resources department), rather than asserting that her emotional distress resulted from the fact of her discharge (*e.g.*, termination caused her embarrassment and financial loss).

However, Plaintiff must adequately allege sufficient facts to state a claim of relief that is plausible on its face. Defendant argues that aside from the assertion of a legal conclusion, Plaintiff fails to allege any factual averments that suggest that it "engaged in any extreme or utterly intolerable conduct." Plaintiff, in response, contends that she has met the pleading requirement and that "[t]he ultimate merits of the allegation are to be flushed out through discovery[.]" (Pl.'s Resp. at 5.) In this regard, the Court finds that Defendant is correct. In *Travis*, the Court instructed that the first element of a claim for intentional infliction of emotional distress must be demonstrated by a defendant's actions towards the plaintiff which were "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." The defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Travis*, 504 S.E.2d at 425; (citation omitted.) Construing Plaintiff's allegations in the light most favorable to her and assuming Plaintiff's factual allegations are true, the Court finds Plaintiff has not alleged any facts which suggest that Defendant's conduct when effecting her termination was of an outrageous, atrocious nature. This Court, like the West Virginia Supreme Court, appreciates that defining what is outrageous is often a difficult task. *Hines v. Hills*, 454 S.E.2d 385, 390 (W. Va. 1995). However, West Virginia courts have found that extreme and outrageous conduct did not exist to constitute an intentional infliction of emotional distress in various employment settings, including, when an employer terminated its employee after only four days of employment and after informing the employee that she had nothing to worry about. *Hatfield v. Health Management Associates of West Virginia*, 672 S.E.2d 395 (W. Va. 2008); *see also Dunfee v. Global Contact Services, LLC*, No.2:10-cv-1250, 2010 WL 5141789 (S.D. W. Va. Dec. 13, 2010) (plaintiff alleged that he suffered severe harassment, ridicule and disparaging comments by co-workers, that his complaints of such

10

conduct made the harassment worse, and that he was fired due to false accusations; however, the court found plaintiff failed to allege outrageous conduct surrounding his discharge or employment); *Love v. Georgia-Pacific Corp.*, 550 S.E.2d 51 (W. Va. 2001) (no outrageous conduct found when employer transferred employee to a new job following employee's husband's dismissal and the couple's lawsuit against the employer for wage and payment claims); *Hines*, 454 S.E.2d 385 (court found a jury verdict for intentional infliction of emotional distress was inappropriate where the employer decided to discharge and prosecute employees who purchased tricycles that were improperly scanning as $3.00 when the toys were really being sold for $19.97); *Cook v. Heck's Inc.*, 342 S.E.2d 453 (W. Va. 1986) (no outrageous conduct found in manner in which employee was fired when she was discharged because of her and her husband's association with the employer's potential competitor); *Yoho v. Triangle PWC, Inc.*, 336 S.E. 2d 204 (W. Va. 1985) (no outrageous conduct found when an employee was terminated after she had been off work for over a year receiving worker's compensation benefits). Further, the *Travis* court explained that "liability [for outrageous conduct] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Travis*, 504 S.E.2d at 425 (citations omitted.) Upon consideration of the foregoing and having given careful consideration to Plaintiff's pleading, the Court finds that Plaintiff has not alleged sufficient factual allegations, in her claim for intentional infliction of emotional distress, to raise a right to relief above the speculative level. Therefore, Defendant's motion to dismiss count two should be granted.

### C. Breach of Contract

Plaintiff alleges that she "signed an Updated Associate Handbook Acknowledgment form which sets forth the terms of employment and rights and responsibilities of the parties," that she

11

contacted the Human Resources Department as required by the Associate Handbook "to address the issues she was having with the district manager," and that she was discharged in "retaliation and in direct violation of company policy." (Compl. ¶¶ 17-19). Defendant moves for dismissal of Plaintiff's breach of contract claim by asserting that the 2009 Associate Handbook signed by Plaintiff does not create a contract or promise sufficient to alter the at-will employment relationship with Defendant.

As the Court previously provided, the at will doctrine governs employment relationships in West Virginia. However, the West Virginia Supreme Court of Appeals has recognized that the at-will relationship can be contractually modified by representations or provisions in an employee handbook or policy manual relating to discharge or job security of covered workers. *Younker v. Eastern Associated Coal Corp.*, 591 S.E.2d 254 (W. Va. 2003); *Cook v. Heck's, Inc.*, 342 S.E.2d 453 (1986). In *Cook*, the West Virginia Supreme Court of Appeals concluded that:

> a promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employees's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable."

(*Cook*, 342 S.E.2d at 459.) The court further stated that: "[t]he inclusion in the handbook of specified discipline for violations of particular rules accompanied by a statement that the disciplinary rules constitute a complete list is prima facie evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without case." (*Id.*) Central to this holding in *Cook*, that a handbook may serve to support a contractual relationship, is whether the handbook contains a definite promise by the employer not to discharge the employee except for specified reasons. (*Id.*) However, the court noted that "'[n]o unilateral contract arises merely by

the fact that [the employer] has alerted employees that certain conduct may form the basis of a discharge.'" (*Id.*) (citation omitted). Several years later in *Suter v. Harsco Corp.*, 403 S.E.2d 751 (W. Va. 1991), the West Virginia Supreme Court of Appeals clarified this employee handbook exception by recognizing that employers can protect themselves from employee handbook contractual modifications by proclaiming that the employment relation is to be terminable at will and by including in the employee handbook that the handbook's provisions are not exclusive. (*Id.* at 754.); *Dent v. Fruth*, 453 S.E.2d 340, 344 (W. Va. 1994) (upon consideration of *Suter*, the West Virginia Supreme Court of Appeals stated that a disclaimer in an employee handbook should inform the employees of two things: (1) that they are employees at will and can be terminated at any time and (2) that the handbook is not a contract.).

In this case, Defendant argues that "the Handbook specifically preserved the at-will nature of [Plaintiff's] employment[]" and that Plaintiff failed to assert any provision of the Handbook which would reflect a "very definite" promise to create a contract. (Def.'s Mem. at 9.)[7] In her Response, Plaintiff asserts that she was terminated after making a complaint to the Human Resources Department, in accordance with the Associate Handbook. She argues that she has alleged

---

[7] Defendant attached an exhibit to its motion to dismiss which included select pages from its Associates Handbook, as revised in June 2009, and the June 12, 2009 acknowledgment form signed by Plaintiff indicating that she read and understood the information provided in the Handbook. (Def.'s Ex. A (Document 5-1). The Court has reviewed the proffered pages of the Associate Handbook and Plaintiff's acknowledgment form, but finds that its consideration does not warrant treatment of the instant motion as one made for summary judgment, as contemplated by Rule 12(d) of the Federal Rules of Civil Procedure. "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)) (other citations omitted). The pages reviewed in this instance were referred to by Plaintiff in her breach of contract cause of action and the documents are integral to and explicitly relied on in the Complaint. Moreover, Plaintiff has not filed any objection regarding the authenticity of the documents or to the Court's consideration of the same.

13

that the Associates Handbook created a contract, but that the existence of a contract or its impact on the employer-employee relationship is a question of fact to be resolved by a jury.  Plaintiff also argues that courts in West Virginia have acknowledged that a personnel manual can constitute a unilateral contract.  (Pl.'s Resp. at 4.)

The Court has fully considered the parties' pleadings, in the light most favorable to the Plaintiff, and finds that Plaintiff fails to state a claim of breach of contract that has facial plausibility because her complaint lacks factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.  Plaintiff alleges that she has a contract with Defendant, based on the Defendant's Associate Handbook, and that her termination was made in violation of company's policy. However, that handbook contains the following statement:

> This handbook does not constitute a contract guaranteeing employment for any duration.  Maurices is an 'at will' employer, which means that we, or you, can terminate your employment, with or without cause or notice, at any time.

(Def. Ex. A. (Document 5-1) at 8).  The Court finds that this statement both informs Defendant's employees that they are working at the will of the Defendant and can be terminated at any time, irrespective of cause, and that the handbook is not a contract. Plaintiff acknowledges reading and understanding the Handbook and signing an acknowledgment of the Associate Handbook. (*Id*. at 11; Compl. ¶17.)  This disclosure statement seems to afford adequate protection to the employer from contractually modifying its employment relationship with Plaintiff.   Notwithstanding Plaintiff's allegation that a contract exists and her argument, in response to Defendant's motion, that a unilateral contract can be created by an employee manual, Plaintiff does not contest Defendant's assertion, in its motion, that the disclosure statement contained in the Associate Handbook supports a finding that no contractual relationship exists as between it and Plaintiff. Moreover, Plaintiff's

Complaint contains no allegations which indicate specific provisions of the Associate Handbook which evince a "definite promise" that would alter the at will nature of her employment. Plaintiff instead asserts that the question of the existence of a contract is a question for the jury. However, Plaintiff has failed to allege facts that raise her claim for relief above a speculative level. Therefore, the Court finds that dismissal of Plaintiff's breach of contract claim is warranted.

### D. *Punitive Damages*

Finally, Defendant seeks dismissal of Plaintiff's separate claim for punitive damages. Defendant argues that Plaintiff cannot maintain a separate, independent cause of action for punitive damages. In West Virginia, punitive damages are damages that "a jury may allow[, in the proper case,] against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong." *Harless*, 289 S.E.2d at 702 (quoting *O'Brien v. Snodgrass*, 16 S.E. 2d 621 (W. Va. 1941)) (citations omitted). Punitive damages are a form of relief, and in West Virginia law, a separate cause of action for punitive damages does not exist. *Cook*, 342 S.E.2d at 461 n. 3 (W. Va.1986) ("we clearly do not recognize a cause of action for punitive damages unless it is based on some underlying wrongful act involving gross fraud, malice, oppression, or wanton, willful, or restless conduct or criminal indifference to civil obligations affecting the rights of others."); *see also Miller v. Carelink Health Plans, Inc*., 82 F. Supp.2d 574, 579 n. 6 (S. D. W. Va .2000) ("West Virginia law does not recognize an independent cause of action for punitive damages."). Therefore, a separate clause of action is not allowed. Additionally, in light of the findings made herein, no underlying wrongful act survives this motion, thereby precluding

Plaintiff's right to relief of punitive damages. Therefore, Plaintiff's separate cause of action for punitive damages should be dismissed.

*IV.*

The Court has considered Defendant's motion, the memorandum in support thereof, Plaintiff's opposition thereto and the entire record herein, and for the reasons stated above, finds that Plaintiff has not adequately asserted sufficient factual allegations to survive Defendant's motion to dismiss. Therefore, the Court does hereby **ORDER** that Defendant's Motion to Dismiss (Document 5) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 31, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA